UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALLAN W. CLARK,<br><br>Defendant | Case No. 23-cr-20359<br><br>Hon. SHALINA D. KUMAR<br>United States District Judge<br><br>Hon. PATRICIA T. MORRIS<br>United States Magistrate Judge |

**GOVERNMENT'S MOTION AND BRIEF FOR DETENTION**

The United States moves for detention because Allan Clark poses a danger to the community. Earlier this month, the state police caught Clark—who was on supervised release for distributing methamphetamine—attempting to distribute cocaine. Worse yet, he has a history of violently assaulting others, including stabbing a person to death. All of the factors under 18 U.S.C. § 3142(g) weigh in favor of detention. Consistent with the rebuttable presumption of detention and the recommendation by Pretrial Services for detention, Clark should be detained pending trial 18 U.S.C. § 3142(e)(1).

**Brief**

One week ago, a grand jury indicted Clark for possessing cocaine with the intent to distribute under 21 U.S.C. §§ 841(a) & (b)(1)(C). (ECF No. 1). On June 26, 2023, he made his initial appearance.

## I. Analysis

### A. 18 U.S.C. § 3142(e) Detention and the Rebuttable Presumption

The Bail Reform Act of 1984 provides that a court shall order a defendant detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of any person and the community." 18 U.S.C. § 3142(e)(1). The finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2).

Clark is subject to a rebuttable presumption of detention. This presumption arises when there is probable cause to believe that the defendant committed an offense for which the maximum prison term of ten years or more is prescribed under the Controlled Substances Act. 18 U.S.C. §§ 3142(e)(3)(A). Here, Clark is charged with a drug-trafficking offense punishable by more than ten years' imprisonment. (ECF Nos. 1, 8). The presumption therefore applies.

The resulting presumption in favor of detention imposes a "burden of production" on the defendant, and the government retains the "burden of persuasion." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). A

defendant satisfies his burden of production when he comes forward with evidence that he does not pose a danger to the community or a risk of flight. *Id.* Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id., citing United States v. Mercedes*, 254 F.3d 433, 436 (2nd Cir. 2001).

**B. Factors To Be Considered Under 18 U.S.C. § 3142(g)**

In making a determination as to whether there are conditions of release that will reasonably assure the safety of any other person and the community, the court must consider certain factors. The factors are (1) the nature and circumstances of the offense charged, including whether the offense involved a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18

U.S.C. § 3142(g).

### *The Nature and Circumstances of the Offenses Charged*

The United States proffers the following facts. On June 4, 2023, the state police learned that that Clark was driving on a local street to deliver a large amount of cocaine to another person.

Soon after, the state police saw Clark driving a car, pulled behind him, and activated their overhead lights. But Clark refused to stop and led the state police on a slow speed chase. While fleeing, he tossed a box out of the passenger side window that landed in the grass. The trooper saw him do this and called it in. A second state police car collected the box and found suspected cocaine inside. The Michigan State Police Crime Laboratory later tested the substance, determining that it was about 84 grams of cocaine.

The state police eventually boxed in Clark's car in a parking lot and arrested him. After initially denying any knowledge of the cocaine, Clark admitted later that he was running "an errand" for a friend and was to deliver the cocaine to a third party. He revealed that he would make a couple hundred dollars for doing so.

### *The History and Characteristics of the Defendant*

The United States proffers the Pretrial Services Report and the following facts. Although Clark graduated from high school, he "displayed ongoing assaultive behavior" that resulted in an "early out" diploma because of his

aggression. (4:19-cr-20088 ECF No. 18, PageID.58.). As a juvenile in 1992, Clark received probation for assault with intent to commit sexual battery. (*Id*.).

Clark escalated his violent acts once he became an adult. In 1998, Clark pleaded guilty to attempted malicious destruction of property. (*Id*.). Clark threatened a victim at her home and then kicked in her door when she refused to let him in. (*Id*.). The next year, Clark violated his probation by threatening a victim over the phone and possessing a firearm. (*Id*.). For this conduct, Clark pleaded no contest to attempted felonious assault and possessing a firearm as a felon. (*Id*. at 59). Around this same time, Clark also pleaded guilty to another attempted threats by telephone charge. (*Id*.).

For his felony convictions, the court originally placed Clark on probation, which he later violated by failing to attend counseling and by being dismissed from a residential treatment program for *fighting* with another person. (*Id*.). In 2000, the court sentenced Clark to prison for the violations, where he served the maximum sentence without parole due, in part, to committing 12 misconducts. (*Id*.). The department of corrections released Clark from prison in August of 2001. (*Id*.). Less than a year later, he graduated to brutally killing another person. (*Id*.).

In June 2002, Clark and some friends attended a county fair. (*Id*.). Clark and his friends exchanged some unpleasant words with a second group of guys, including the three victims. (4:19-cr-20088 ECF No. 18-5, PageID.74–76.) Clark

threw a punch at Victim-1, who then reciprocated. (*Id*.). As they wrestled to the ground, Clark was on top of Victim-1, who immediately exclaimed, "he's stabbing me, get him off, he's stabbing me." (*Id*.). Clark repeatedly stabbed Victim-1 in the chest, who later died from those stab wounds. Clark also stabbed the other two victims that tried to help their friend: Victim-2 was stabbed in the buttocks and twice in the bicep; Victim-3 received three puncture wounds to the stomach. (*Id*.). Victim-2, Vicim-3, and presumably Victim-1 had never met Clark before this encounter. (*Id*.). In 2002, Clark received sentences of 10–15 years for the manslaughter of Victim-1, 2–4 years for the felonious assaults of Victim-2 and Victim-3, and 2–5 years for attempted riot. (4:19-cr-20088 ECF No. 18, PageID.60.) What stands out about these events is Clark's senselessness and savageness: he quickly transformed an exchange of words and a simple fistfight into a killing. (*Id*.).

Clark doubled down in prison by committing another felony in 2010. (*Id*.). Prison officials confiscated several stabbing instruments from Clark. (*Id*.). He pled guilty to possessing weapons as a prisoner and received a sentence of 14–60 months in prison, which ran consecutively to his manslaughter sentence. (*Id*.). After fifteen years in prison, the state paroled him in July 2017. (*Id*.). About 14 months later, Clark posted a photograph and commentary about this case on his Facebook account:

6



He authenticates the photograph by describing it as "actual evidence photos from my case . . . From when I was in the joint." (4:19-cr-20088 ECF No. 18-6, PageID.77–78.)[1] Far from expressing remorse for his criminal conduct, Clark was publicly boasting about the stabbing instruments that he had in prison—instruments designed to injure or kill people. (*Id*.). And all this comes from a person that served ten years in prison for using a knife to kill another person. By his Facebook post, Clark essentially wanted others to know that he is still dangerous, lest anyone forgot. The Court should take him at his word.

---

[1] This exhibit is a screenshot that shows the profile page for Clark's Facebook account in which he uses the alias "Al Duel." The profile page contains photographs of Clark and the profile photograph assigned to the account is of Clark. This exhibit also shows a screenshot of this posting, which itself contains a photograph of Clark surrounded by the stabbing instruments. This exhibit was saved by law enforcement during its investigation of Clark.

Violating the conditions of his parole, Clark committed the offense for which he is on supervised release (distribution of methamphetamine) and another one that resulted in a state-court conviction. (4:19-cr-20088 ECF No. 18, PageID.62.) Clark pleaded guilty to using a controlled substance for events that occurred in September 2018. (*Id*.). He threw three packets of suboxone out of the window of his car when the police attempted to pull him over. (*Id*.).

***The offense for which he is on supervised release.*** On Sept. 11, 2018, Clark arranged a meeting to sell some methamphetamine to another person. (4:19-cr-20088 ECF No. 18, PageID.57.) At the meeting, he knowingly sold and provided 13 grams of methamphetamine to another person for $650. (*Id*.). Law enforcement later seized the substance Clark sold and the DEA laboratory's analysis determined that the substance consisted of about 13 grams of actual methamphetamine. (*Id*.).

The FBI recorded this transaction, which reveals that Clark and the other person also discussed firearms for about three minutes, from 3:12 p.m. to 3:15 p.m., after the methamphetamine exchange occurred. (*Id*.). While agreeing to "keep my eyes and ears open" for guns to sell the other person, Clark expressed a preference for smaller caliber firearms:

> But I be owning them for myself though Bro, especially compact, like 22s, 380s, them little bitty ones, I love them, Bro, because you can keep them right in your pocket, they're easy to find . . . they [other people] don't even realize you got it until it's too late, letting them have it. (*Id*. at 57–58.)

As for these type of guns, Clark disclosed, "I'm always on them." (*Id*. at 58).

He later informed the other person that "listen, if I come with one [gun], them things come and go so fast if somebody is actually selling one, usually if someone puts a pistol on the market, Bro, that bitch don't last a day." (*Id*.). After estimating the price range to be between $200 and $300 for this type of gun, Clark and the other person then parted ways. (*Id*.).

The court sentenced Clark to 70 months' imprisonment in the Bureau of Prisons and he is currently facing a petition for violating the terms of his supervised release. (4:19-cr-20088 ECF No. 22, PageID.97–99.)

All this shows that Clark's history and characteristics strongly weigh in favor of detention and that there are not conditions of release that will reasonably protect the public because he has proven he will not follow them.

### *The Weight of the Evidence*

The weight of the evidence against defendant refers to the weight of evidence of dangerousness, not the weight of evidence of defendant's guilt. *United States v. Stone,* 608 F.3d 939, 948 (6th Cir. 2010). "The circulation of addictive drugs such as cocaine presents a grave danger to the community's health and wellbeing." *United States v. Catchings*, No. 12-20372, 2021 WL 3417912, at *4 (E.D. Mich. Aug. 5, 2021). Here, Clark admittedly possessed cocaine with the intent to distribute it—violating the conditions of his supervised release. His

history of violent acts—including killing another person—and interest in weapons also show his dangerousness.

This factor also weighs in favor of detention.

### *The Nature and Seriousness of the Danger Posed*

As to the last factor, the nature and seriousness of the danger to any person or the community that would be posed by the person's release, defendant does not fare any better. "Our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010) (fn. 6). In another drug trafficking case, the Sixth Circuit observed that the defendant "victimized individuals (by selling addictive drugs to them) and the community (by making addictive drugs readily available in the area)." *United States v. Hodges*, 641 F. App'x 529, 532 (6th Cir. 2016). Clark poses a danger to others here through his continued drug trafficking, his willingness to assault others, and his interest in possessing weapons.

Like the three previous factors, this one also weighs in favor of detention.

### *Other Considerations*

GPS monitoring, home confinement, or a third-party custodian make no sense here. Clark is 44 years old—not some youthful offender. Nearly two decades

in prison and periods of supervision have failed to deter him. He now faces drug trafficking charges again. He cannot be trusted to follow pretrial release conditions—he has proven himself too unreliable for that. Home confinement or a third-party custodian would not stop him from dealing drugs out of his house or acquiring and using weapons.

## II.     Conclusion

All of the § 3142(g) factors weigh in favor of detention. Consistent with the rebuttable presumption of detention and the Pretrial Services recommendation of detention, the Court should detain Clark pending trial.

Respectfully submitted,

DAWN N. ISON
United States Attorney

Dated: June 28, 2023

s/BLAINE LONGSWORTH
Assistant United States Attorney
600 Church Street | Flint, MI 48502-1280
Phone: (810) 766-5177
blaine.longsworth@usdoj.gov
P55984

11

CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

All Attorneys of Record

Dated: June 28, 2023                    s/ Kristi Bashaw, Legal Assistant
                                        United States Attorney's Office